UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DAHLIA G.,[1]

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

NO. CV 17-03647-KS

MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Dahlia G. ("Plaintiff") filed a Complaint on May 15, 2017, seeking review of the denial of her application for a period of disability and disability insurance benefits ("DIB"). (Dkt. No. 1.) On December 12, 2017, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 12, 14, 21.) On July 12, 2018, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 27.) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for

---

[1]     Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

further proceedings. (Joint Stip. at 19.) The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings. (*Id.* at 20.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On November 25, 2013, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] (*See* Administrative Record ("AR") 11, 131-152, 153-154.) Plaintiff alleged disability commencing March 5, 2010. (AR 181.) The Commissioner denied Plaintiff's applications in an initial determination on February 20, 2014. (AR 11, 80-85.) On March 7, 2014, Plaintiff filed a written request for a hearing. (AR 86-88.) Administrative Law Judge James D. Goodman ("ALJ") held a hearing on August 20, 2015 at which Plaintiff, who was represented by counsel, testified. (AR 26-53.) After receiving Plaintiff's testimony at the hearing, the ALJ determined that he would need the assistance of a vocational expert ("VE") and would use interrogatories to do so. (AR 52.) On September 14, 2015, VE Elizabeth Ramos provided written interrogatory responses. (AR 265-66.) On November 13, 2015, the ALJ issued an unfavorable decision, denying Plaintiff's applications. (*Id.* 11-21.) On March 15, 2017, the Appeals Council denied Plaintiff's request for review. (*Id.* 1-3.)

\\
\\
\\
\\

---

[2] Plaintiff, who was born November 14, 1960, was 49 years old on the alleged onset date and thus met the agency's definition of a younger individual. *See* 20 C.F.R. § 404.1563(c). Plaintiff subsequently changed age category to closely approaching advanced age. (AR 20; and s*ee* 20 C.F.R. § 404.1563(e).) She was 54 years old on the date of the administrative hearing. (AR 35.)

2

# SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015. (AR 13.) The ALJ further found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 5, 2010. (*Id*.) The ALJ next determined that Plaintiff had the following severe impairments: "chronic back pain with lumbar spondylolisthesis, mild degenerative joint disease of the right shoulder, hypertension, and obesity." (AR 14.) In reaching that determination, the ALJ found that Plaintiff's other complaints of left knee, ankle, wrist, and foot pain were nonsevere. (AR 15.) The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (AR 16.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to:

> lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to six hours, cumulatively, and sit up to six hours, cumulatively, in an eight-hour workday. The [Plaintiff] can occasionally climb, balance, bend, stoop, and crawl, but never climb ropes, scaffolds, or ladders.

(AR 17.)

The ALJ found that Plaintiff was able to perform her past relevant work as a Data Entry Clerk and Data Entry/Secretary as actually and generally performed. (AR 20.) Nevertheless, relying on interrogatory responses by the VE, the ALJ also concluded that there are other jobs existing in the national economy that Plaintiff is able to perform. (*Id.*) Thus, the ALJ made alternative findings at step five of the

3

sequential evaluation process that Plaintiff could perform other occupations including Receptionist (DOT[3] 237.367.038, sedentary, SVP[4] 4, semi-skilled); Booth Cashier (DOT 211.462-010, light, SVP 2); Title Counter Clerk (DOT 249.366-010, light, SVP 2, unskilled); and Information Clerk (DOT 237.367-018, light, SVP 2, unskilled). (*Id.* at 21; and see AR 265.) The ALJ also determined that the VE's interrogatory testimony was consistent with the information contained in the DOT. (*Id.*)

Accordingly, the ALJ determined that "although [Plaintiff's] additional limitations do not allow [Plaintiff] to perform the full range of light work," Plaintiff has not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the ALJ's decision. (AR 21.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

//
//

---

[3] "DOT" refers to the Dictionary of Occupational Titles (U.S. Department of Labor, 1991).
[4] "SVP" refers to Specific Vocational Preparation, as defined in Appendix C of the DOT.

4

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

## DISCUSSION

The sole issue in dispute is whether the ALJ properly considered Plaintiff's subjective testimony concerning the severity of her symptoms. (Joint Stip. at 4.)

//
//
//
//

## I. Plaintiff's Testimony

At the administrative hearing, Plaintiff testified about her symptoms. (AR 27-53.) She stated that at the time she filed her DIB application in November 2013, she was having some back pain in her lower mid-section area and blurry vision. (AR 42-43.) She noticed the pain when she was sitting down and lying down. (AR 44.) When the ALJ asked what might prevent her from returning to her previous work, Plaintiff testified that "mentally, [she] can't concentrate" and forgets what she's supposed to be doing. (*Id.*) She stated that she had been to one session of psychotherapy and needed to make another appointment. (AR 45.) Plaintiff testified that she had complied fully with her doctor's instructions, medications, and treatment, but she stopped taking one of her pain medications because it gave her migraines. (AR 45-46.)

Plaintiff testified that she gets weekly headaches that "stay[] for at least half the week. At least three to four days." (AR 46.) She uses an inhaler for asthma but notices no change after using the inhaler. (AR 47.) Lifting her right shoulder causes pain and "a feeling of locking." (AR 47.) She said that if asked to grip the water container on the hearing table, which weighed about two and a half pounds, with her right upper extremity, it would hurt. (*Id.*) She is left-handed and can write her name with her left hand but touching her fingers with her thumb on her right hand caused a "little pain." (AR 48.) She indicated she does not gaze downward to look at her shoes "too much because of the pain." (*Id.*) When asked to look at the ceiling, Plaintiff said she felt "numbness and like a lock muscle pain" in her shoulder. (*Id.*)

She is able to wash and bathe herself with her left hand. (AR 48-49.) She uses her left hand to apply make up but cannot use her right hand for any of those purposes. (AR 49.) She is able to prepare her own meals and can use cutlery with her left hand.

(*Id.*)  She said that a heel spur in her right heel causes problems with her right ankle and she can only walk about 10 to 15 minutes because of the heel spur.  (AR 50.)  She can stand about 10 minutes.  (*Id.*)  She has forearm pain in her right arm and she has numbness on the inside of the right arm.  (AR 50-51.)  The ALJ noted at the hearing that Plaintiff was wearing a pain medication patch that extended from her right shoulder up through the bicep.  (AR 51.)  Plaintiff also testified that she had received a trigger point injection in her left wrist that helped "[a] little bit" but the pain comes back.  (AR 52.)

At the conclusion of the hearing, the ALJ indicated that he would seek the assistance of a VE by using interrogatories and invited Plaintiff to add any proposed augmentation to the record if she wished to do so.  (AR 52-53.)

## II. ALJ's Assessment of Plaintiff's Testimony

In his decision, the ALJ noted that Plaintiff's "symptoms associated with chronic back pain with lumbar spondylolisthesis, mild degenerative joint disease of the right shoulder, hypertension, and obesity significantly interfere with her ability to perform basic work activities on a regular and continuing basis" and these impairments were, therefore, severe.  (AR 44.)  The ALJ determined that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's statements "concerning the intensity, persistence and limiting effect of those symptoms [were] not entirely credible."  (AR 18.)

The ALJ gave several reasons for not finding Plaintiff's subjective testimony fully credible.  (*See* AR 18-19.)  First, the ALJ noted that the medical evidence of record did not document "significant objective findings" that would support the

degree of Plaintiff's alleged limitations. (AR 18.) With respect to the pain in her right upper shoulder, the ALJ observed that Plaintiff was seen in September 2012 and reported she had been experiencing this pain for two months, but the examination revealed no significant finding. (*Id.*; AR 309.) A January 2013 examination also "noted no findings" as to her right shoulder pain. (AR 314.) The ALJ observed that a consultative examination in February 2014 found Plaintiff's gait to be normal and a neurological examination also found normal sensation, deep tendon reflexes, and motor strength. (AR 293-94.) Further, the ALJ explained that "images have documented few findings as well" and pointed to an x-ray of Plaintiff's lumbar spine that showed "anterior spondylolisthesis at L5-S1 and narrowing of the L4-5 disc space" but described these finding as "only slight" and two x-rays of Plaintiff's right shoulder, the ALJ also found "unremarkable." (AR 18; *see* AR 297, 326.)

Second, the ALJ found Plaintiff not fully credible because Plaintiff "has not received the type of treatment one would expect for a disabled individual." (AR 18.) The ALJ observed that her record of treatment was sporadic and infrequent. Specifically, the ALJ pointed out that while Plaintiff alleged disability beginning in March 2010, she did not seek any treatment from her primary care physician or an emergency room between November 2009 and February 2011 and "was not seen again until almost a year later, in January 2012." (*Id.*; AR 336-38.)

Third, the ALJ explained that Plaintiff's credibility was eroded by the fact that her treatment has been "routine and conservative in nature" consisting primarily of pain medication, with no indication that physical therapy or surgical intervention was ever recommended. (AR 18.)

//
//
//

Finally, the ALJ pointed to notations by the consultative psychiatrist, Dr. Simonian, who questioned whether Plaintiff put forth her best effort during an examination of her intellectual functioning. (*Id*.; AR 285-86.)

III. **Applicable Law**[5]

An ALJ must make two findings in assessing a claimant's pain or symptom testimony. SSR 16-3P, 2017 WL 5180304, at *3; *Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler*, 775 F.3d at 1102 (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id*.; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015).

In assessing a plaintiff's testimony, the ALJ may consider a number of factors, including: (1) daily activities; (2) the location, duration, frequency, and intensity of

---

[5] Effective March 28, 2016, Social Security Ruling ("SSR") 16-3P rescinded and superseded the Commissioner's prior rulings as to how the Commissioner will evaluate a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims. *See* SSR 16-3P, 2017 WL 5180304, at *1. Because the ALJ's decision in this case was issued on November 13, 2015, it is not governed by SSR 16-3P. *See Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 714 (1974) (courts generally apply the law in effect at the time it renders its decision *(citing United States v. Schooner Peggy,* 5 U.S. 103 (1801)). In pertinent part, SSR 16-3P eliminated the use of the term "credibility" and clarified that a subjective symptom evaluation "is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, at *2; *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Rather, adjudicators will more closely follow the Commissioner's regulations, which require that adjudicators "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." SSR 16-3P, 2017 WL 5180304, at *2. However, the changes are largely stylistic, and SSR 16-3P is consistent with Ninth Circuit precedent that existed before its effective date. *See Trevizo*, 871 F.3d at 678 n.5

pain and other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3P, 2017 WL 5180304, at *7-*8; 20 C.F.R. § 416.929(c). The ALJ must also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)). "General findings are insufficient." *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). "When evidence reasonably supports either confirming or reversing the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ." *Batson v. Comm'r of Soc Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Even with these legal requirements for assessing a plaintiff's credibility, disability benefits cannot be granted solely based on a plaintiff's subjective complaints. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability."); 20 C.F.R. §§ 404.1529(a), 416.929(a) (ALJ must consider all of a claimant's statements about symptoms, but statements about pain or other symptoms will not alone establish disability).

IV. **Discussion**

An ALJ's assessment of a claimant's credibility is entitled to "great weight." *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985). In this case, because the ALJ

made no finding that Plaintiff was malingering, the ALJ could reject the Plaintiff's testimony about the severity of her pain and other symptoms only by stating clear and convincing reasons supported by substantial record evidence for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *and see Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (applying "clear and convincing" standard).[6] Here, the ALJ provided four reasons for finding Plaintiff less than fully credible as to the severity of her symptoms and limitations.

### 1. Absence of Significant Findings of Shoulder or Back Abnormalities

First, the ALJ noted that Plaintiff's treatment history was not consistent with the severity of impairments that Plaintiff alleged. The ALJ pointed to long periods in the medical record when Plaintiff received no treatment for her back and shoulder pain. The ALJ's observation is well supported by the record evidence. With respect to her shoulder pain, Plaintiff was seen in September 2012 and reported that she had had pain in her right upper arm for two months without any history of injury. (AR 309.) She had been using Ben-Gay, an over-the-counter ointment, "without much improvement." (*Id.*) The treatment notes indicate that she was prescribed medication for "muscle pain" and told to return for an appointment in 2-3 months. (AR 309-10.) These records are consistent with the ALJ's conclusion that the examination revealed no significant findings. In November 2012, Plaintiff returned to request a refill for Soma for her back pain, but the records show no additional diagnoses or testing results for her shoulder or back pain. (AR 312.) A January 2013 examination found that the pain in her right upper extremity was "localized in the right shoulder." (AR 314.) At

---

[6] The Commissioner objects to the "clear and convincing" standard, maintaining that the standard is inconsistent with the deferential substantial evidence standard set forth in 42 U.S.C. § 405(b)." (Joint Stip. at 14 n.3.) Nevertheless, the Commissioner acknowledges that the Court is bound to apply the clear and convincing reasons standard as the law of this Circuit. (*Id.*)

11

this visit, Plaintiff was advised to follow a low cholesterol diet, increase high fiber foods, and told to return in 3 months. (AR 315.) As the ALJ found, there were no additional findings, testing, or diagnoses as to her right shoulder pain. (AR 314.)

The notes from a consultative examination in February 2014 indicate that Plaintiff reported pain "on the lower and mid back and right shoulder", the examiner also noted "no joint inflammation" and found the joints of her upper extremities to be normal "except the right shoulder which revealed alleged pain on abduction and forward flexion of 130/180 degrees." (AR 293.) In addition, Plaintiff's gait was normal, a neurological examination also found normal sensation of her upper and lower extremities, deep tendon reflexes of the upper and lower extremities were normal, and her motor strength was 5/5 symmetrically. (AR 294.)

The ALJ also explained that the imaging revealed few findings that supported the severity that Plaintiff alleged. (AR 18.) Specifically, the ALJ noted that an x-ray of Plaintiff's lumbar spine done on February 14, 2014, revealed only "slight" anterior spondylolisthesis at L5-S1 and "slight" narrowing of the posterior L4-5 disc space. (AR 297.) An x-ray of Plaintiff's right shoulder taken the same date found "no abnormality in the right shoulder." (*Id.*) These imaging results are similar to x-rays taken of Plaintiffs right shoulder in October 2013 that also showed "no significant bony, articular, or soft tissue abnormality[.]" (AR 327.)

Accordingly, the Court finds this reason the ALJ provided for finding Plaintiff less than fully credible to be clear and convincing and supported by substantial record evidence.

//
//
//

## 2. Gaps in Treatment History

The second reason the ALJ provided was Plaintiff's sporadic and infrequent treatment record. Despite Plaintiff's alleged disability beginning March 5, 2010, there is a significant gap in Plaintiff's treatment record between November 2009 and February 2011 and even then, Plaintiff was not treated again for nearly a year until January 2012. As Plaintiff points out, however, she did not have health insurance for much of this period. (Joint Stip. 9-10.) The Ninth Circuit has held that a claimant's failure to obtain medical treatment during a period when she had no medical insurance cannot be used as a basis for finding her testimony not credible. *Orn*, 495 F.3d at 638.

Plaintiff testified that she lives with her mother and her only source of income is from food stamps. (AR 34-35; *see* AR 140, 147.) The medical records indicate that she refused a recommendation of physiotherapy for her right shoulder pain because she had no medical insurance and also deferred x-ray studies for the same reason. (AR 333-34.) She also declined lab screening and mammogram screening because she did not have medical insurance. (AR 336.)

Plaintiff correctly points out that "[a]n ALJ may properly discount a plaintiff's credibility based on an unexplained failure to seek treatment consistent with the alleged severity of the subjective complaints." (Joint Stip. at 9 (*citing Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)). But here, Plaintiff's lack of insurance provides a "good reason for not seeking additional treatment that was recommended, including physiotherapy. *Smolen*, 80 F.3d at 1284; *Orn*, 495 F.3d at 638.

This second reason given by the ALJ for finding Plaintiff's subjective testimony less than fully credible is not legally sufficient. However, any error by the ALJ was

13

harmless because, as discussed below, other reasons the ALJ provided to support his credibility determination were free of legal error.

### 3. Routine and Conservative Treatment

The ALJ's third reason for finding Plaintiff less than fully credible as to the severity of her symptoms was the routine and conservative nature of treatment that she received. (AR 18.) The Ninth Circuit has held that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

Plaintiff testified that she experiences severe chronic pain in her back, right shoulder, and ankle that prevents her from working. She said she has weekly headaches that last "for at least half the week," she could not lift a two and half pound water vessel with her right upper extremity without experiencing pain, that she has pain in her right hand just touching her fingers with her thumb, pain when turning her head to the left or gazing downward at her toes, she can only use cutlery or bathe with her left hand, she can only sit for 10-15 minutes, and can stand for 10 minutes. (AR 46-50.) On an Exertion Questionnaire, Plaintiff indicated that she cannot bend down due to daily lower back pain, she has difficulty walking because of bone spurs in her right foot/heel, she cannot climb stairs, she cannot lift, she can carry a basket of clothes from the bedroom to a washroom, she cannot walk and stand too long at stores, she only drives once or twice a week for five miles or less, and she must rest for an hour twice a day at least. (AR 195-97.)

In finding Plaintiff's subjective testimony about the intensity, persistence and limiting effects of her symptoms not fully credible, the ALJ found her testimony

14

inconsistent with the medical evidence. The ALJ pointed to record evidence that Plaintiff's treatment had primarily consisted of pain medication and there was no indication that physical therapy or surgical intervention was ever recommended. (AR 18.) The ALJ is permitted to consider the type of treatment a claimant receives when assessing the credibility of her subjective complaints. 20 C.F.R. § 404.1529(c)(3)(iv), (v). Indeed, the record evidence reflects that Plaintiff's treatment consisted almost exclusively of short appointments to manage and/or refill her medications for muscle pain, with regular counseling about her weight, diet, and blood pressure. (*See, e.g.*, AR 309, 315, 319.) Plaintiff's daily pain medications include Hydrocodone-acetaminophen, Vicodin, and muscle relaxer Robaxon. (AR 197, 201, 270-71.) Beyond these oral medications, the only other treatment recommendations in the record are for physiotherapy, which Plaintiff declined due to her lack of health insurance. (AR 271.) She saw her treating physician, Dr. Shi-Fang Wang, every few months for medication refills and blood pressure monitoring, but nothing in the record indicates either more frequent treatment of her symptoms or more aggressive treatment modalities beyond the oral medications. At the same time, imaging impressions for her right shoulder were consistently noted as "normal" and x-ray results identified "no significant bony, articular, or soft tissue abnormality" in her shoulder. (AR 324, 326-27.) The same is true for images taken of her right ankle. (AR 325, 328-29 (noting effusion in ankle joint but "underlying bones are normal.").)

Given this evidence, the Court finds the ALJ's credibility determination based on Plaintiffs conservative and routine treatment was a clear and convincing reason supported by substantial record evidence. Accordingly, the ALJ's finding that Plaintiff was less than fully credible is free of legal error and does not warrant reversal.

//

//

### 4. Less Than Best Effort During Intellectual Functioning Exam

The ALJ also found a notation by consulting psychiatrist, Dr Simonian, that raised a question about Plaintiff's effort during an intellectual functioning examination "relevant to the credibility of [Plaintiff's] allegations." (AR 18.) Specifically, Dr. Simonian, reported that: "The [Plaintiff's] intellectual functioning was judged to be intact and average. However, it was the impression of this psychiatrist that the [Plaintiff] did not set forth the best effort during formal testing of intellectual functioning[.]" (AR 285-86.) The ALJ did not identify this reason as a primary basis for discounting Plaintiff's credibility, noting only that it was "relevant." Under the agency's revised guidelines, an ALJ must "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." SSR 16-3P, 2017 WL 5180304, at *2. Even so, the ALJ made no determination that Plaintiff was "malingering" and there are no other indications in the record similar to Dr. Simonian's observations about Plaintiff's mental or physical functioning.

Consequently, this is not a clear and convincing reason supported by substantial record evidence to discount Plaintiff's testimony about the severity of her symptoms and limitations. But any error is harmless to the ultimate credibility determination because, as noted above, the ALJ gave other legally sufficient reasons that are adequately supported by substantial evidence in the record.

### 5. Plaintiff's Contentions as To Daily Activities and Work History

Plaintiff also argues that in making the credibility assessment, the ALJ failed to consider or discuss both Plaintiff's activities of daily living and her extensive work

history prior to the disability onset date. (Joint Stip. at 11-12.) Plaintiff maintains that her testimony about her daily activities are not readily transferable to the workplace environment and the ALJ failed to take this into account. (*Id.* at 11.) Although Plaintiff concedes that the ALJ addressed Plaintiffs activities of daily living at Step 2. (*Id.*) In addition, Plaintiff contends that Plaintiff's long work history from 1982 to 2010 "is probative of credibility" and in failing to discuss Plaintiff's work history as part of the credibility analysis, the ALJ gave "short shrift" to this evidence. (*Id.*)

In response to these arguments, Defendant rightly points out that the ALJ is not required to consider a positive work history as a dispositive factor when assessing a plaintiff's credibility. (Joint Stip. at 19 n.4.) Plaintiff cites no authority to the contrary. Indeed, courts in this Circuit have held that even when a plaintiff's work history is laudable, there is no legal requirement that an ALJ "elevate work history to a dispositive factor, or to discuss it in his ruling it if is not necessary to do so." *Lamberson v. Astrue*, 2012 WL 4494813, at * 5 (C.D. Cal. Sept. 28, 2012).

With respect to Plaintiff's activities of daily living, the ALJ did not give this as a reason for discounting Plaintiff's subjective testimony about her symptoms and limitations. Nor was he required to do so. Accordingly, the Court finds no legal error in the ALJ's failure to address Plaintiff's activities of daily living when assessing Plaintiff's testimony.

## CONCLUSION

After a careful review of the medical record, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.
//

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY

DATE: January 3, 2019

*/s/ Karen L. Stevenson*
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE